**SO ORDERED.**

**SIGNED this 05 day of January, 2009.**

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

AMERICAN HEALTH AND HUMAN          CASE NO. 08-03135-8-JRL
SERVICES, INC.,                                       Chapter 11

    DEBTOR.

O R D E R

On December 29, 2008, the court conducted a hearing on confirmation of the debtor's Chapter 11 plan. This order provides the rationale for the court's ruling at the conclusion of the hearing denying confirmation and dismissing the case.

BACKGROUND

The debtor is a North Carolina corporation engaged in rehabilitative health care services for juveniles in Pasquotank County, North Carolina. The sole shareholder and president of the debtor is Andrea Simpson. At one time, the debtor had more than one hundred employees and annual receivables exceeding two million dollars. Its financial difficulties began when the North Carolina Division of Medical Assistance assessed a fine of $500,000 against the debtor for unnecessary Medicaid billings. Although the debtor was able to repay approximately half of the fine, its operations were brought to a halt when the federal government began to recoup the remainder of the fine from its current billings. At the time of the Chapter 11 filing in May of

2008, the debtor had no employees and had ceased operation.

The debtor also owns nine residential rental properties, three tracts of land, and two commercial properties. One of the commercial properties, the Halstead Boulevard property, was intended to be the headquarters for the debtor. However, it is now only approximately 40% complete. Some of the residential properties are used by the debtor in its provision of services to juveniles. Others simply provide rent to fund the debtor's operation. A number of financial institutions hold deeds of trust on these properties; all oppose confirmation of the debtor's plan, and a number have moved for relief from stay.

During the Chapter 11 case, the debtor has resumed operation. It currently has seventeen employees, and is servicing 45 to 50 clients. In its plan, the debtor proposes to continue to increase its client base, and with this increased revenue, pay all of its reamortized secured debt.

## ANALYSIS

At the conclusion of the confirmation hearing, the court identified three distinct grounds for denying confirmation. Each is addressed in turn.

First, the debtor's plan proposes to reamortize all of its secured debt on its real property in the same fashion: the payment period for each will be extended to thirty years, and interest will be paid at 7%. At the confirmation hearing, counsel for Royal Bank of Canada ("RBC") presented testimony of its senior credit officer, Larry Clifford Clark, that this treatment in no way resembles the current market treatment for commercial loans of this nature. Although he concedes that the interest rate is within the current range, in his view, no financial institution would amortize a loan of this nature for a term of more than twenty years, and would insist on a balloon payment at three to five years. The court credits this testimony as consistent with the

treatment provided secured creditors in other recent cases. Accordingly, the plan does not comply with Section 1129(b)(2)(A).

Second, the evidence of the debtor supporting feasibility is woefully inadequate. In the debtor's most recent monthly report, debtor discloses that it generated $46,594.72 in accounts receivable during November while servicing 50 clients. In its projections, debtor inflates this number for January 2009 to $73,843 based on servicing only 45 clients. Even crediting the debtor's testimony that its November report mistakenly identified not its accounts receivable for November but instead its actual receipts, the conclusion is the same; the income currently received does not support the future projections. Accordingly, the plan does not comply with Section 1129(a)(11).

Third, and most seriously, the evidence at the hearing established that the debtor has so completely ignored the basic financial requirements for operating in a Chapter 11 that the plan runs afoul of Sections 1129(a)(2) and (3), requiring that the debtor has complied with all provisions of Chapter 11 and proposed its plan in good faith. The problems are manifest. Because the debtor's principal has no understanding of what constitutes an account receivable, his confusion of that term with money actually received renders the reports nonsensical. Although the debtor did set up three debtor-in-possession accounts at the beginning of the case, they have not been used for their intended purpose. Most seriously, none of the thousands of dollars of rental income received during the case has ever been deposited into the DIP account. Although the principal of the debtor testified that he converted the rental payments into cashier's checks with which he paid expenses of the debtor, there is no way to verify this assertion. Although money was deposited into the personnel account, in the month of November alone, the

3

account went into the red seven different times and incurred NSF charges. Additionally, there are unexplained debit withdrawals from the personnel account. The tax account has apparently never been utilized for its intended purpose. Although the debtor's monthly report for November shows over $13,000 in withholding taxes paid during that month, none of these funds were deposited into or came out of the tax account. The debtor's principal, Mr. Simpson, candidly admitted at hearing that he is a "terrible financial manager." Unfortunately, the bankruptcy rules set strict parameters for how a debtor-in-possession must conduct its financial affairs, and the court cannot allow a plan to be confirmed in the face of such gross mismanagement. The debtor may have a solid business plan, and had an accountant been hired in the early days of this case to provide financial advice to the debtor, the result here might have been different. But these serious mistakes cannot be undone at this juncture.

     Pending before the court is the motion of the Bankruptcy Administrator to convert this case to a Chapter 7 case. The court in its discretion concludes that dismissal is the better path here. Although the affairs of the debtor have been mismanaged, the court sees no evidence of defalcation requiring investigation. There is little evidence of equity in the real property, and outstanding accounts receivable would likely be insufficient to pay the administrative costs of the trustee. Although it is unlikely it will be able to retain its real property, the debtor may still be able to maintain a viable business outside of bankruptcy. Accordingly, confirmation of the debtor's plan is denied with prejudice, and this case is dismissed. This ruling renders moot the pending motions for relief from stay, and the debtor's motions for employment of an insider and employment of an accountant.

END OF DOCUMENT